COLLINS &c.
vs.
CHAMP'S HEIRS.

---

## Collins, &c. vs. Champ's Heirs.

Case 17.

APPEAL FROM BOURBON CIRCUIT.

1. It is a well established doctrine that money directed to be employed in the purchase of land and land directed to be converted into money, are to be considered and treated as that species of property into which they are directed to be converted, and so treated in the distribution of estates, without regard to the manner in which the direction is given, whether by will, marriage contract, settlement, or otherwise. (1 vol. Powell on Devises, 60; Williams on Ex'ors, 1 vol. 414.) So land purchased by the guardian of an infant, with his personal estate, will be treated as personalty. (Ib. 418.)

2. If a guardian be charged with interest on the fund of the infant in his hands in the report of an auditor appointed to report the state of his accounts, and there be no exception to the report in the court below, it will not be noticed in this court.

Case stated.

William Collins, the guardian of Henry C. Champ, filed his petition in the Bourbon Circuit Court for the sale of two small tracts of land, belonging to said infant, lying in that county, consisting of about eighty acres—part devised to him by his father, Thomas Champ, and part descended to him from his infant brother, George Champ—alleging that said two tracts of land were some distance apart, destitute of timber, without any dwelling-house, or other suitable improvements to make it profitable, and praying a sale of the land, and a reinvestment of the proceeds of the sale in lands calculated to be more productive.

The Circuit Court, in conformity with the prayer of the petition, decreed that the two tracts of land be sold, one-third of the money to be paid down, the balance to be paid in one and two years from the day of sale, in equal installments, and appointed the guardian commissioner to make the sale. The commissioner made the sale, and reported to the court that he had done so. Before any further steps were taken, or the whole of the money had become due, Henry C. Champ died, still an infant, leaving a widow, but no child.

In December, 1850, the heirs at law of Henry C. Champ filed their bill for distribution of his estate, against the widow and Collins the commissioner.

The Circuit Court, on final hearing, decreed to the widow, who had intermarried with James Soper, since the institution of the suit, one-third of the proceeds of the sale of the land in the hands of the commissioner, which constituted the principal subject of the controversy. The commissioner and Soper and wife, not being content, have appealed to this court.

*T. P. Smith*, for appellants—

Argued, 1. That the Circuit Court erred in treating the proceeds of the land sold in the lifetime of the infant as land and not as money in the hands of his guardian.

There being no child, the widow of H. C. Champ was entitled to one-half of the personal estate. (1 *Stat. Law*, 660.) The term chattels is comprehensive, and embraces every species of property not real or freehold. (2 *Kent*, 342.) If H. C. Champ had been of full age, and sold his land with the expressed intention of purchasing other land, but had not done so before his death, the proceeds would clearly have passed to his personal representative. (*Muldrough vs. Muldrough*, 2 *Dana*, 386.) If an executor be directed to sell lands, and the will further provides that upon the application of the guardian of the children, the executor shall dispose of the proceeds in such

manner as may appear most consistent with the welfare of the children, and the executor make sale of the land, but make no disposition of the proceeds before his death, in such case, according to the principle laid down in *Haggard vs. Rout's heirs*, 6 B. *Monroe*, 250, and in other cases decided by this court, it would be regarded and treated as a conversion of land into money. As to the latter proviso in the case supposed, a mere discretionary power to convert given to an executor, if unexercised, ceases at his death. (*American Leading Cases*, 551 to 558; 2 *Dana*, 81.)

What H. C. Champ could have done himself, on attaining majority, has been done by authority of law. The court did convert the land into money. The court may have intended to reinvest the money in land; had the power to do so, but it was discretionary. It may have been so intended when the sale was ordered; that intention might have been changed; a change in the circumstances of the minor or his pursuits might and doubtless would have produced a corresponding change of purpose with the Chancellor. At the death of the minor the purpose of the Chancellor ceased. The power and authority of the guardian ceased. The property and estate of the minor, as it then existed, passed to the heirs and representatives—the parties to this suit—and the law fixes its course of distribution and descent.

If there be a mere discretion to convert there is no change in the character of the property until the discretion be exercised. (*American Leading Cases*, 556, 547; *Christler's ex'or vs. Meddis*, 6 B. *Monroe*, 37.)

2. The Circuit Court erred in decreeing the payment of interest by Collins, the commissioner, upon the fund in his hands; he was bound to keep subject to the disposition of the court, and had no instructions to loan it out, and therefore ought not to be compelled to pay interest.

*A. M. Brown and W. W. Alexander*, for appellees—

1. The general principle applicable to this case is not denied by the appellants' counsel; but it is insisted by him that the direction to convert land into money, or to purchase land, must be express, positive, and not liable to be changed by any contingency, or at the discretion of the party by whom it is to be carried out; that in this case Champ, on his arriving at full age, could have taken the money and prevented the reinvestment of it in land, or that the court might have changed its purpose of reinvesting it, and committed it to the hands of the guardian as personalty. This may be all true; but the fact remains that the court had determined and directed that the proceeds of the lands should be reinvested in other lands. It had thereby fixed the character of the fund, and the death of the infant deprived the court of any further control over it. The character of the fund, as fixed by the court, passed upon the death of H. C. Champ to those entitled to it in the character given to it by the court.

A sale was asked by the guardian for the purpose of reinvestment. The court ordered the sale for that purpose; it might have refused a sale for any other purpose; no purpose of changing the character of the property was suggested or sanctioned by the court; and it is not admitted that the court could have changed its decree and left the fund as a money fund in the hands of the guardian. On this question of conversion the court are referred to *American Leading Cases in Equity*, 550; *Haggard vs. Rout's heirs*, 6 *B. Monroe*, 37.

2. The guardian was properly charged with interest on the fund in his hands. No objection was made to this charge in the Circuit Court upon the return of the report of the auditor, and it is now too late to make the objection.

Judge STITES delivered the opinion of the Court.

' This is an agreed case, and the only question presented for our consideration is, whether the money

COLLINS, &c.
*vs.*
CHAMP'S HEIRS.

December 27.

Collins, &c.
vs.
Champ's Heirs.

arising from the sale of the land, in the hands of the commissioner in chancery, was properly deemed real estate for purposes of distribution.

The petition for the sale of the real estate was filed by the guardian of the infant, for the express purpose of converting the land then held by him into other real estate more advantageous to his ward. The decree directing the sale obviously contemplated a reinvestment of the proceeds in other lands, otherwise it would not have directed the commissioner and guardian to report to the court "an abstract of the title to the land proposed to be purchased." But before the investment was made by the commissioner, and whilst the money was in his hands subject to the control of the court, the infant, Henry C. Champ, died, leaving a widow but no children.

1. It is a well established doctrine that money directed to be employed in the purchase of land and land directed to be converted in money, are to be considered and treated as that species of property into which they are directed to be converted, and so treated in the distribution of estates, without regard to the manner in which the direction is given, whether by will, marriage contract, settlement, or otherwise. (1 vol. Powell on Devises, 60; Williams on Ex'ors, 1 vol. 414.) So land purchased by the guardian of an

It is an established doctrine in courts of equity, that things shall be considered as done which ought to have been done, and no rule is better settled, than that money directed to be employed in the purchase of land and land directed to be sold and converted into money, are to be considered as that species of property into which they are directed to be converted, and this in whatever manner the direction is given, whether by will, contract, marriage settlement, or otherwise. (Powell on Devises, volume 1, 60; Williams on Ex'ors, volume 1, 414; Loughborough vs. Loughborough, 14 B. Monroe;) so lands purchased by the guardian of an infant with his personal estate will, in case of his death during his minority, be considered still as his personal property; so also where the committee of a lunatic invested part of his personal estate in lands in fee, it was held that they should be taken as personalty, and at his death not go to the heir at law. (Williams on Ex'ors, vol. 1, 418.) And we can perceive no good reason why the rule should not operate in the present case. The fund is placed by the instrumentality of the guardian under the control of the Chancellor, with the assent

of the infant, as he alleges, for a certain purpose, and incipient steps taken to accomplish that end. It was considered by all parties as a fund for that purpose, and in our opinion the Chancellor did not err in treating it as realty for purposes of distribution and applying the rules applicable to realty in making division between the widow and heirs.

In reference to the error assigned by Collins, on the score of an improper charge of interest, it is only necessary to say that it is now too late to raise that question. He should have excepted to the report in the court below, and the presumption arises from his failure thus to except that he used the money which came to his hands, and was properly chargeable with interest.

The decree of the Circuit Court is affirmed.